**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**RONNIE MOORE, JR.**                                           **PLAINTIFF**

**V.**                    **NO. 3:16CV00079-JTR**

**CAROLYN W. COLVIN,**                                 **DEFENDANT**
**Acting Commissioner,
Social Security Administration**

**ORDER**

**I.  Introduction**:

Plaintiff, Ronnie Moore Jr. ("Moore"), applied for disability benefits on August 5, 2010, alleging a disability onset date of January 11, 2003.  (Tr. at 11).  After conducting a hearing, the Administrative Law Judge ("ALJ") denied his application.  (Tr. at 24).  The Appeals Council denied his request for review.  (Tr. at 1).  Moore filed an appeal with the United States District Court for the Eastern District of Arkansas and the Court affirmed the ALJ's decision (Tr. at 472).

On appeal, the United States Court of Appeals for the Eighth Circuit vacated the District Court's judgment and remanded the case with instructions for further proceedings. (Tr. at 528-32).[1]

On June 17, 2015, an ALJ conducted a second hearing (Tr. 496-519), and then denied Moore's application for benefits. (Tr. 472-90). The Appeals Council denied Moore's request for review (Tr. 460-65), making the ALJ's decision the final decision of the Commissioner.

---

[1]*Moore v. Colvin*, 769 F.3d 987 (8th Cir. 2014).

Moore appealed that decision to this Court.[2]

For the reasons stated below, the Court reverses the ALJ's decision and remands for further review.

## II. The Commissioner's Decision:

The ALJ found that Moore had not engaged in substantial gainful activity since the application date of August 5, 2010. (Tr. at 474). At Step Two, the ALJ found that Moore has the following severe impairments: degenerative disc disease/degenerative joint disease; slight to mild carpal tunnel syndrome; and morbid obesity. (Tr. at 475). After finding that Moore's impairments did not meet or equal a listed impairment (Tr. at 476), the ALJ determined that Moore had the residual functional capacity ("RFC") to perform light work with the following limitations: 1) frequent overhead reaching bilaterally with frequent use of the hands for handling and/or fingering objects; and 2) simple, routine, repetitive tasks, with interpersonal contact that is incidental to work performed, and where the supervision is simple, direct, and concrete. (Tr. at 477). While the ALJ found that Moore was not capable of performing his past relevant work (Tr. at 488), the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Moore's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that he could perform at the light level with added limitations. (Tr. at 489). Based on that Step Five determination, the ALJ held that Moore was not disabled. (Tr. at 490).

---

[2]The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

**III. <u>Discussion</u>:**

    A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing.

    B.  Moore's Arguments on Appeal

Moore argues that substantial evidence does not support the ALJ's decision to deny benefits. He contends that the ALJ did not correctly determine his RFC, and also failed to

adequately develop the record. He asserts that if the ALJ had properly developed the record, his RFC would have been more limited and would have ruled out all work at Step Five. After carefully reviewing the entire record, the Court concludes that the ALJ did not adequately develop the record, which resulted in an RFC determination that was not based on substantial evidence.

A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations. The ALJ is required to base that determination on all relevant and credible evidence in the record. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011); *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010). "In determining the claimant's [RFC], the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of [his] impairments." *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). The ALJ bears the primary responsibility for assessing a claimant's RFC – that is, what he or she can still do, in spite of severe impairments. *Wildman*, 596 F.3d at 969.

The central problem with the ALJ's RFC determination centers on Moore's back impairment. Because the record is in conflict regarding Moore's back injuries, a review of the medical evidence is necessary.

Moore reported that he fell 25 feet out of a tree in January 2003, which caused his back problems. (Tr. at 299). At the emergency room, he was prescribed Vicodin and Norflex for pain. *Id.*

In October 2006, Moore treated at the Randolph County Medical Center emergency

room three times. A lumbar spine x-ray revealed disc space narrowing at L4-L5 with very mild scoliosis. (Tr. at 311-13, 324-26, 328). He was injected with Toradol and prescribed Hydrocodone. *Id.*

On October 8, 2008, Moore returned to the emergency room with worsening back pain. He was treated with Stadol and Phenergan injections. (Tr. at 350-52).

On October 23, 2008, Moore saw Ron South, M.D. Moore complained of constant back pain and difficulty walking. (Tr. at 186). He said the pain woke him up at night and radiated into his right shoulder. *Id.* Dr. South reviewed a CT scan of the lumbar spine which revealed central disc protrusion at L4-L5, with possible significant spinal stenosis with neuroforaminal narrowing and compression of the exiting nerve root. (Tr. at 186). Dr. South prescribed Lortab and Valium and ordered an MRI. (Tr. 188-89).

On October 30, 2008, a cervical MRI showed a slight reversal of the cervical lordosis, with a mild bilateral neuroforaminal disc bulge at C3-C4, but no significant stenosis. (Tr. at 177-78). A nerve conduction study of Moore's upper extremities showed mild right and left carpal tunnel syndrome. (Tr. at 179-84).

Treatment records from Roger Troxel, M.D., from April 2008 to February 2009 showed ongoing back pain and treatment with Mobic, Vicodin, and Valium. (Tr. at 208-18).

On January 10, 2009, Moore saw Sunil Gera, M.D., a pain management specialist. Moore's wife reported that he had passed out from pain. Dr. Gera found increased muscle spasm in Moore's neck, restricted range of motion with pain in the back and neck, and a positive straight-leg raise bilaterally. (Tr. at 206). Dr. Gera noted that radiofrequency

neurolysis of the cervical spine was working and performed a nerve block. *Id*.

On March 2, 2009, Moore returned to Dr. Gera with tenderness and pain in his back and neck. (Tr. at 205). Range of motion was limited, straight-leg raise was positive bilaterally, and Patrick's test for hip pain was also positive. *Id*. Dr. Gera encouraged Moore to lose weight, and he refilled his Vicodin. *Id*.

At a return visit on March 25, 2009, straight-leg raise was positive, as was Patrick's test for hip pain. (Tr. at 204). At that appointment, Moore underwent a nerve block. *Id.* Dr. Gera counseled Moore against taking too much narcotic medication. *Id.*

On August 12, 2010, Moore visited White River Health Center and was prescribed Zanaflex and Prednisone for back pain. (Tr. 220-21). During that visit, his range of motion was normal but he experienced pain and tenderness in the lumbar spine. (Tr. at 220).

On September 27, 2010, George Guntharp, D.O., found a bulging disc and severe central spinal stenosis at L4-L5. (Tr. at 234). Over four more visits, Dr. Guntharp diagnosed back pain and degenerative disc disease. (Tr. at 243-46).

On August 15, 2011, Moore saw Andrew Jansen, M.D., for back pain. Moore said his pain was aching and stabbing and radiated into the right leg. (Tr. at 384). Moore reported that Hydrocodone was not helping to relieve his pain. *Id*. At an October 14, 2011 visit to Dr. Jansen, straight-leg raise was positive, as was Faber's test bilaterally. (Tr. at 455). Dr. Jansen prescribed Hydrocodone. *Id.*

A February 20, 2012 MRI of the lumbar spine revealed a posterior disc bulge and protrusion at L5-S1, with narrowing of the lateral access of the left S1 nerve root and the

transitional S1 vertebra. (Tr. at 429). L1-L4 levels appeared to be within normal limits, as did paraspinal soft tissues. *Id.* On February 20, 2012, Dr. Jansen found a positive straight-leg raise and Faber's test. (Tr. at 448).

There is a treatment gap of over two years, from February 2012 to April 2014. On April 22, 2014, Moore saw John House, M.D., and reported that he had radiating pain which interferes with work and sleep. (Tr. at 748). However, Dr. House noted normal motor strength and tone and normal gait and station. *Id.*

On May 27, 2014, June 12, 2014, and July 2, 2014, Moore had lumbar steroid injections.

The objective evidence shows a compromised lumbar spine with likely nerve root compression and multiple positive straight-leg raises, which would suggest Moore could not perform work at the light level. The records are not conclusive on this point, however, and there is some conflict in the evidence as noted above. There is no opinion evidence on Moore's RFC limitations, other than from the state agency reviewing physicians, both of whom reviewed the medical evidence in the fall of 2010, *before* much of the relevant medical evidence was even available.[3] Dr. Greenwood's opinion that Moore is "limited" in reaching in all directions (Tr. 228) does not indicate whether those limitations are frequent, occasional, or less than occasional reaching. This point was central to the Eighth Circuit's reversal of

---

[3] State agency reviewing physician Denise Greenwood, M.D., examined Moore's medical records on September 23, 2010. (Tr. at 232). On October 22, 2010, state agency reviewing physician, Bill Payne, M.D., examined Moore's medical records. (Tr. at 240).

the ALJ's first decision (Tr. at 530-32). Thus, on remand, the ALJ in this case should have obtained the opinion of a consultative specialist to quantify the extent of this important limitation before proceeding to determine Moore's RFC. In his cross-examination of the VE, Moore's attorney focused on the difference between occasional and less than occasional reaching, which was *crucial* to the VE's determination of available jobs. (Tr. 517-18). Neither the ALJ nor the VE had enough medical information to ascertain the frequency of reaching that Moore could do.

The ALJ could have obtained more medical evidence, and should have. The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled. *Combs v. Astrue*, 243 F. App'x 200, 205 (8th Cir. 2007) (citing *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994)); 20 C.F.R. § 416.919a(b).  In light of the lack of opinion evidence, the ALJ had a duty to contact the treating sources or order a consultative examination. 20 C.F.R. § 416.912(e); *Nevland v. Apfel*, 204 F.3d 853, 857-8 (8th Cir. 2000).  A further examination is required if there is not sufficient medical evidence in the record to determine whether a claimant is disabled.  *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005); *see Cline v. Colvin*, 771 F.3d 1098, 1106 (8th Cir. 2014) (the ALJ is obligated to seek clarifying evidence if concerned that [a treating physician's] treatment notes were inadequate, unclear, or incomplete). Here, no treating or consulting physician offered opinion evidence on a number of issues important to the determination of Moore's RFC, and the state reviewing physicians examined Moore's medical records in 2010, years before the Eighth

Circuit reversed and remanded the ALJ's first decision. As a result, there was not any evidence of how frequently Moore could reach in all directions, which required the ALJ to further develop the medical evidence by obtaining the opinion of a consulting physician.

Apart from the incomplete medical record, the ALJ characterized Moore's treatment history for his back as "conservative" treatment. (Tr. at 487). To the contrary, Moore took narcotics for his back pain over several years, and underwent multiple nerve blocks and steroid injections, and repeated objective imaging. This aggressive treatment of Moore's back pain cannot be fairly characterized as "conservative."

An ALJ has a duty "to assess the credibility of the claimant and other witnesses." *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). A reviewing court "will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." *Wildman*, 596 F.3d at 968 (citation omitted). Credibility findings are entitled to deference when they are supported by substantial evidence in the record. *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). The Court does not decide here whether the ALJ's credibility analysis was correct, but only points out the importance, on remand, of fully and fairly characterizing factors that are relied on to challenge Moore's credibility.

**IV. Conclusion:**

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ failed to fully develop the record. The decision is hereby reversed and the case remanded with instructions for further review.

IT IS SO ORDERED this 3rd day of November, 2016.

_____
UNITED STATES MAGISTRATE JUDGE